### BETTS, Adm'r. *versus* BLACKWELL'S HEIRS.

1. Where an administrator, under an order of Court, sells the personal estate of his intestate, at a public sale, on a credit of twelve months, the debts to be secured by bond and security, permits one of the purchasers to carry off such portion of the property as he may have bid off, without giving security, and is unable afterwards to obtain the security, the administrator by such negligence renders himself liable to the estate, for the amount thus carried off.

2. A decree of a county court, on final settlement with the administrator, against such administrator, for the balance which he has become liable to pay, rendered in favor of "*the estate, or the legal represrntaties thereof*," and awarding execution, is void for uncertainty.

In error from Madison county court. Betts, administrator of Blackwell, in pursuance of an order of court, sold a quantity of seed cotton, belonging to the estate of his intestate, at public sale, on a credit of twelve months, the purchasers to give bond with good security. After it was thought that nearly all the cotton had been sold, one Atkinson bought the part that remained. This proved to be larger than was anticipated, amounting in value to $476 42. The cotton bought by Atkinson was weighed and taken away by him immediately after the other purchasers had received their portions, without his having given bond and security. On the next day the administrator went over to the house of Atkinson, to obtain

the bond with the security required. But Atkinson, who was in good credit when he purchased the cotton had the night afterwards run off his slaves; and when called upon by Betts, could not give security. Betts required a return of the cotton, but, could not obtain it: and being left without other recourse, he took Atkinson's bond alone. On this state of the case, the Judge of the County court, on final settlement with the administrator, decreed that said estate, or the legal representatives thereof, should have judgment against said administrator for a certain specified amount (the said $476 42 making part of it) with execution thereon. It was here contended by the plaintiff in error, that the court below erred in making the administrator liable for the amount of the cotton sold to Atkinson; and that the decree was void for uncertainty.— These were the questions presented for the determination of this court.

SAFFOLD, J.—The plaintiff in error as administrator of Josiah Blackwell, sold, pursuant to an order of the Orphans' court of Madison county, a large quantity of seed cotton, of the estate of his intestate. The cotton was sold in lots of a stipulated quantity, on a credit, with an understanding that the purchasers were to secure the payment of the price by their bonds, with good security. After it was supposed that nearly all the cotton had been sold, the residuary quantity, if any, was offered for sale, and purchased by Dr. Atkinson. The bonds of the purchasers were not then made, as there was not time, after the sale, to weigh and deliver the cotton on the same day.— Within a few days afterwards, all the purchasers of specific quantities, obtained their cotton, and a much

larger residuary quantity was left than had been expected. Atkinson received his cotton immediately after the prior purchasers obtained theirs: he was then in good credit, and Betts went to his residence the next day after the cotton had been received, to get his bond with security. But the night before, which was the first night after he received the cotton, Atkinson had run his slaves from the country, which destroyed his credit, and he was then unable to give the security as required by the administrator; and as the administrator could not procure a return of the cotton, for which he also applied, he took Atkinson's own bond for the purchase money.

On this evidence, as appears from a bill of exceptions, the Judge of the County court, in making a final settlement with the administrator, determined that he was liable individually to the heirs of the intestate, for the sum of $476 42, the amount of Atkinson's bond; and proceeded to give judgment against the administrator for the sum of four thousand five hundred and nineteen dollars and six and one-fourth cents, the balance found against him, including the amount of said bond : the language of the record is, that, "it is therefore considered and decreed by said court, that said estate, or the legal representatives thereof, have judgment and execution against Charles Betts, administrator," &c. for the said sum of money.

It is assigned for error—1. That the court below decided that the administrator was individually liable for the cotton sold to Atkinson, and rendered judgment for the same.

2. That the judgment is uncertain and void, being in favor of the estate, or the legal representatives jointly.

Should the sum due on Atkinson's bond, or any part of it, ever be recovered, it would, in the contemplation of the County court, and as a consequence of the judgment, accrue to the administrator individually. It is also understood that he will in future have, as he has heretofore had, the control of the bond, with every opportunity to realize the amount, if it be possible. If the amount is to be regarded as a clear loss as it appears to have been considered by the court below, it is the undeniable consequence of the administrator's incaution, or negligence, or of his misplaced confidence in Atkinson, or perhaps the union of all. That he did not observe the necessary and usual precaution, or strictness, is evident; and however innocent his motives, it was impossible that the estate could have been benefitted by this departure from the strict line of duty. To have demanded the bond and security before permitting the removal, would have been but the usual requisition, and one reasonable in its nature; that the course pursued was less safe and prudent, none could have entertained a serious doubt at the time or since.

According to this view of the case it is considered distinguishable and less favorable to the administrator than the cases cited in argument, where persons in the exercise of similar trusts have been excused from personal responsibility. In the case of *Osgood* vs. *Franklin*[a] the circumstances were peculiar and embarrasing; so much so, that the Chancellor, in declaring the principles of his decisions, after mentioning many palliating circumstances, obviously distinguishing that case from one like this, remarks, that whether or not the course pursued by that trustee, had been the most advisable, under the then existing

[a] 2 John Ch. R. 1.

circumstances, was a difficult question, on which intelligent and prudent men might differ; therefore he did not feel himself bound by any principles of equity to make him responsible as trustee, for an error of judgment.

The other cases cited are believed to contain no principles materially different, or more favorable to this administrator. Admitting that, before a trustee can be held personally responsible, he must have been negligent, have been in wilful default, or gross ignorance, such appears to have been the situation of this administrator—he cannot have been insensible of his departure from the line of his strict duty, when, after having the cotton weighed, he permitted it to be carried off before securing the payment, by taking the proper bond; and it is thought not improbable he then considered himself as acting on his own responsibility. Under this assignment of the facts of record, we think there is no error.

2. The other assignment relates to the uncertainty of the judgment.

It is true that it does not sufficiently show in whose favor it is rendered; it is declared to be in favor of the *estate* or the *legal representatives* thereof. The estate, by this title, is incapable of being a party to a suit, or judgment; and if, by legal representatives, is to be understood the heirs of the intestate, no information is afforded by the record how many there are, or were supposed to have been; nor whether adults or minors; consequently it is uncertain whether they are competent in their own right, to appear as plaintiffs in any judgment or decree, such as this was intended to have been. The record is equally uncertain whether the judgment was intended to be joint

or several, in favor of the representatives; unless, from the general expression, we can assume the fact that it was intended to be joint, and, if so, its legality in that respect may well be questioned.

It might be noticed as a further objection, that the record does not show the circumstances under which the judgment or decree was rendered, whether at the instance of the administrator alone, or on the application of any distributee—such showing would have presented the record in a more satisfactory state. It can not be inferred that the whole proceeding was only intended as an expression of the opinion of the court, respecting the liability of the administrator, because the record assumes the language of a judgment, and authorizes the issuance of an execution upon it.

On the latter assignment alone the judgment is reversed, and the proceedings remanded.